You may proceed. May it please the Court, I'm John Dudry for the petitioners M. Cutter and Liberty Northwest Insurance. The parties disagree about what kind of case is before the Court. Is this a case where the administrative law judge made findings of fact, selected more credible expert testimony, applied the broad provisions of the Longshore Act, Section 7A, to a very nonspecific prescription? That's the view of the administrative law judge. The view we urged the Court to accept on appeal was also the view of two members of the Benefits Review Board. Well, as a matter of fact, there was evidence that this gentleman needs 24-hour attendant care. And the legal question that arises is whether the employer has to pay for all of that or whether it can subtract time that a spouse spends caring for them. Well, it's 24 hours. Doesn't it come down to just that simple question? That is the director's view and the claimant's view. All of the facts except for the doctor's prescription, and it was for 24-hour supervision, which I think is a somewhat more ambiguous term. Is that all the judge needed to know? We think not, Your Honor, and we can start with the prescription itself. Well, just a minute. The board accepted the judge's facts of determination, right? And that was the judge's determination. Well, it accepted the one, Your Honor, and stopped there. It then characterized Mr. Carroll's situation in a manner that was entirely opposed to the administrative law judge's findings and the record. Well, the ALJ says, calls it claimant's need for 24-hour attendant care. Well, the prescription, such as it was, and there's only correspondence about it in the record, between the doctor and my client, the insurer, was, well, this man has fallen down. He wandered off as of April 99, a couple of months after he was released from the hospital. He should have 24-hour supervision. There's never been any implementation or elaboration, I should say, by the doctor. But the administrative law judge, in his findings, talks over and over again for 24-hour live-in attendant care, and over and over refers to the necessity of that. That's a fact. Either he does or he doesn't need that, and the administrative law judge found that he did. Well, I don't think, Your Honor, that you get all the way to where the Board got by stopping there, and that's because the ---- Well, no, I guess, but that's why I said it seemed to me that there is no factual dispute at this point that he requires 24-hour attendant care. Well, he doesn't need constant attendance, and that's, I think, where the facts start to become disputed and where the Board overstepped its bounds, Your Honor. He doesn't need someone around all the time. He needs someone in the vicinity. So are you contesting the ALJ's findings of fact as well? Absolutely not. I'm contesting the Board's findings of fact, which they have no power to do. Show me where in the Board's decision, what are you saying, it makes a finding that's not at odds with, that is at odds with the finding made by the ALJ? Absolutely, Your Honor. Okay. Point that out to me because I want to focus. It's page 20. Page 20, all right. There's no dispute that the claimant cannot be left alone. The judge said this is at ER 6. The ALJ said this is not a case where the claimant needs constant assistance, and that was supported by testimony of one of Mr. Carroll's daughters at ER 77-78 and by testimony of one of the home attendants, Phyllis Jessica, at ER 150 and 51. That's the first one. The second one, at ER 21, Your Honor, the claimant's family must now remain alert at all times when they are with him. Again, the daughter, at the same page as I just cited, 77 and 78 of the excerpts, said that depending on what he's doing, she'll check on him more or less frequently. And the attendant said the same at the pages I cited, 150 and 51 of the excerpts. The board finds at ER 21 there is no evidence that the claimant can go safely without supervision while his wife or other family members are sleeping. Yes, Your Honor. In the administrative law judge's findings, he describes the testimony of both of the experts and says that both of them determined that the claimant needs 24-hour attendant care for a number of different things. And the only real question was whether the person had to be live-in or not, but that he needed attendant care 24 hours a day, regardless of which expert she looked at. That's the administrative law judge's finding, which was accepted by the board because it wasn't challenged as a finding of fact. Well, the case was tried on whether an attendant needed to be brought in 24 hours a day or less than 24 hours a day, and what was the best measure for the claimant to provide someone to be around, to be a reasonably astute person. And all of the examples that were given either occurred very early, within the first couple of months after Mr. Carroll returned home from the hospital, the hearing was held the better part of two years later, or they occurred during times when there's absolutely no question that my clients need to provide attendant service. Essentially, when it's all added up, it comes to about 14 1⁄2 hours a day. Okay, but let me read you another sentence. I'm having difficulty focusing on what exactly your claim is. The administrative law judge found, and I'm looking at page 3 of the excerpts of record. Yes, Your Honor. There's a sentence that says, Nevertheless, as the employer ultimately acknowledged, claimant is in need of 24-hour care. Numerous examples of claimants' need for 24-hour attendant care were provided at the hearing and in various depositions, and then there are a bunch of examples. Are you contending that it is not true that the employer ultimately acknowledged that claimant is in need of 24-hour care? No. The prescription has not been disputed. It's how it is to be implemented and whether somebody needs to be paid 24 hours a day to do the kind of attendance that Mr. Carroll. Well, what does that mean? In other words, that part of the care can be provided by a person who is not paid. Is that what you're saying? Because of the nature of Mr. Carroll's impairment. Because of the nature of the care. The nature of the care. In other words, it's a lower level of care, so somebody should give it for free. I'm not sure that anybody is being asked to do anything other than be there for free when they'd be there anyway. And really what it's boiling down to is, does the family or Mrs. Carroll get paid to sleep through the night? Well, that's a legal question, though, because what you're asking the board to do is to give an employer a different requirement to pay depending on whether somebody is or isn't married, depending on whether they are or are not getting along with their spouse, depending on the level of alertness of their spouse. Why isn't their interpretation of the statute, if not the only possible one, perfectly reasonable? Well, the cases are all fact-specific. And the facts are pretty specific here that the need and the judge found, Your Honor, that it was minimal, at least in the evening hours. And that's a finding, too. And the recitation I was giving earlier, in answer to Judge Tashima's question, is an example of where I believe the board made its own independent review of the record and came to different conclusions from the administrative law judge. The, I mean, what would they do? Because they said the administrative law judge treated the liability as a question of fact when it is really a question of law. What's wrong with that? Well, no. The question is how that liability is to be carried out. The statute talks about such attendant service as the nature of the injury or the process of recovery requires. It does require a look at the individual record. And this is a gentleman who simply needs to have someone around now and then. And how would he be better? I guess I asked the question myself rhetorically getting ready this morning if Mrs. Carroll or some other family member who was going to be there anyway was getting paid to sleep through the night. She only identified him two times when there was a problem during the night, so she doesn't get up when he gets up. Sometimes she does, sometimes she doesn't. So, again, once you take the broad mandate, the unexplained prescription, and put it in an actual setting, which is the only way it can be applied, then I think this is what the court has. It has a record with inferences to be drawn from conflicting testimony. The judge made findings supported by evidence, and he applied the statute. There's no regulation, no implementing notice and comment rule that anybody has cited that applies this, and it's simply a matter of fitting the broad statutory command in a nonspecific prescription to specific facts, again, based on a lot of testimony from people directly involved and conflicting expert testimony. When you have a two-to-one decision by a three-member panel, as we have here, and there are some considerations pointed out by the dissent of the policy of the program that's being administered, I was just wondering, you're familiar with Chevron deference. Yes, sir. Administrative agencies. Why doesn't Chevron deference play a part in this kind of an appeal? Because this is the director's litigating position. As I just said, Your Honor, there is no notice and comment rulemaking type rule involved here. The director doesn't even cite the regulation. It just parrots the statute, so it doesn't get them anywhere. Judge Graber's decision in Gilliland has been cited. I think the Wilderness Society en banc decision has superseded some of that analysis in that litigating positions are now more fixed in the deference spectrum, I guess you could call it, because of the Skidmore case. To the extent it's persuasive, then it would be followed that it doesn't command Chevron-type deference. The problem here is if all the director is doing is arguing the application of the statute to a specific set of facts, the cases say there's no deference out at all. So I think it's somewhere between none and Skidmore, Your Honor, and in the absence of rulemaking, Chevron simply isn't an issue. Thank you, counsel. I think we understand your position. We'll hear from the other parties. Thank you. Okay. Ms. Flynn? Thank you, Your Honor. May it please the Court, Megan Flynn representing Laurie Carroll, and I'm going to save half the time on response for Mr. Boyle to address the OWCP's position. The strange thing about this case is that there's no dispute that the babysitting Mr. Carroll requires, even at night, is a form of other attendance within the meaning of Section 7A. All the experts agree that if there's nobody there, somebody needs to be sent in, and the employer doesn't dispute that on times that Mrs. Carroll isn't at home, somebody needs to be there. Well, when you say doesn't dispute it, though, I mean, apparently the employer's position is that the Board, in some ways, either misconstrued some of the broad statements of the ALJ or misapplied it. To the best I can understand the employer's argument, it's that Mr. Carroll needs somebody in the home, and so if at the time that his wife is allowed to be on a respite or has to be away, they'll provide the care he needs. But if she's there anyways, it's not a big deal. No, no, no, I understand. It's not only his position, but he's saying that was the ALJ's position, and the Board misconstrued that position. I agree that was the ALJ's position. The ALJ very much did a weighing of how much burden it is going to be on this spouse to be in the home sometimes versus other times, and ended up saying she needs more time off than an employer was willing to pay for, and sort of modifying the rules. So the way Mr. Carroll reads that analysis by the ALJ is that what it means is that Mr. Carroll does not need 24 hours of paid attendant care. That's what the ALJ concluded as a question of fact. He doesn't need attendant care 24 hours. Although he says that broadly, when you read the analysis, it really doesn't mean that. I think that's correct. The ALJ finds that the claimant needs 24-hour attendant care, and then finds, as a matter of fact, that it doesn't need to be paid. But that paid is not a fact. All right. So what I'm getting at is then do you agree that the Board made a finding of fact that differs from the ALJ's finding? No. The Board correctly said whether it's paid is a matter of law under an unambiguous interpretation of the statute. That's not a factual question. The only factual question is whether he can be left alone or not. Right. Whether he needs that attendant care, and that part was not in dispute. Attendant care is a term of art. The finding of fact is somebody needs to be there all the time. Right. Another life-responsible human being needs to be there. Right. And there could have been a finding of fact that he doesn't get up, you know, that at nighttime he doesn't. He only needs daytime care. But that wasn't the finding. The finding is even at night, that babysitting he requires is an other attendance within the meaning of Section A, as the Board said. And the only answer under Section 7A is the employer shall furnish it. And whether or not that works. And then that nighttime care, because we'll say presumably it's less strenuous and requires less work, could maybe be fulfilled by somebody at a lower rate of pay. Exactly. I mean, that's exactly where that would factor in, is it's not strenuous, so perhaps somebody wouldn't be paid as much for that time period, and that may be what the employer has found with nighttime care. But still, there's a need for attendant care during that period in case something happens. Yes. As a factual matter, that's what the ALJ found. Sort of like a fireman being on duty. Right. Exactly. They still need to be there and be ready. All right. So in other words, then in your view, what the Board did is consistent with the factual findings of the ALJ. Entirely. The only difference is that the Board said, and where the Board disagreed within itself, was whether that should it be paid is a legal question or a factual question. Which is an application of the law or an interpretation of the law. It's an interpretation of the law. Although I think it's the only interpretation. I think I understand your position. Thank you, Your Honor. Thank you. Mr. Borrell. Thank you, Your Honor. May it please the Court. I think there are two relevant factual findings. The first one is that Mr. Carroll needs attendant care 24 hours a day. The second one, which is the one that the employer is focusing on, is that Mr. Carroll's family is capable of providing some of that care. And the employer's argument is that because the Board didn't base its decision on that second factual finding, that Mr. Carroll's family is capable of providing some of his care, it thereby substituted his judgment for a factual finding of the ALJ. And quite frankly, the Board didn't do that. It looked at that factual finding. It didn't make a contrary factual finding. It said that was irrelevant. It said it was irrelevant. Under the statute. Exactly, Your Honor. So the primary factual finding here, and the only factual finding that really matters, is that Mr. Carroll needs attendant care 24 hours a day. If he does, the statute mandates that the employer provide that care. And what the ALJ did was shift the burden that Congress placed on the employer to Mr. Carroll's family. And the problem with that is the outcome is that the employer is not providing a person to furnish the care, and it's not furnishing payment to furnish the care. And if you're not doing either of those things, you're not furnishing the care, and you're not complying with the statute. Unless the Court has any further questions. No? No, I don't believe we do. Mr. Gregory, rebuttal? The, again, I think the issue is proceeding in the abstract, apart from the actual facts, because both the claimant and his wife testified they didn't want someone in the house. What Mrs. Carroll wanted in terms of the burden on her was to be able to have the free time she had before his injury. The Board's position is that those facts are irrelevant, but the only legally relevant fact is that the claimant cannot be left alone, but always requires the presence of a competent adult person. And if that is their position, that fact is not in dispute. And so if their legal position is that no other fact is relevant, why isn't that a legal question? Well, if it's a legal question, then they're wrong, because, again, the statutory language requires focus on the facts. It's fact-specific, and, again, the nature of his disability in the process of recovery indicate the level of care and the kind of care and the frequency of care that's required. And this might be a different case from our view, and the dissenter's view and the administrative law judge's view, if the original prescription had been updated or made more specific or anything else. It's completely been filled in by the actual experience and practice of the parties in the home and the caregivers. And that's the evidence the judge heard, and that's how he arrived at his decision. I think that it is not a one-size-fits-all statute. It has to be applied on a case-specific basis, and that's what the judge did with abundant support in the record from the family, the caregivers, and the expert witness whose testimony he chose was more credible. I think, really, that's – getting back to where I started, so if the Court doesn't have any more questions, I'm – no. I think we don't. Thank you very much. Thank you very much, Your Honor. I appreciate the arguments of all parties. They've been very interesting and helpful. And we'll take a short break, about five minutes, before we hear the remainder of the count.
judges: Goodwin, Tashima, Graber